# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| HENRY CARMICAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:13 CV 937 DDN |
| | ) | |
| JEFF NORMAN, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner Henry Carmical for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

On March 3, 2009, following a jury trial, the Circuit Court of St. Louis County found petitioner guilty of murder in the second degree (Count I), burglary in the second degree (Count II), and stealing property worth less than $500 (Count III). (Doc. 15, Ex. 1 at 147-49.) On April 3, 2009, the trial court denied petitioner's motion for a new trial and sentenced petitioner to a term of life imprisonment on Count I, seven years imprisonment on Count II, and one year imprisonment on Count III. (Id. at 166-68.) The court ordered petitioner's sentences to run consecutively, totaling life plus eight years in the custody of the Missouri Department of Corrections. (Id.) On April 13, 2010, the Missouri Court of Appeals affirmed the judgment on direct appeal. (Id., Ex. 4); State v. Carmical, 310 S.W.3d 731 (Mo. Ct. App. 2010).

On September 20, 2010, petitioner filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. (Doc. 15, Ex. 6 at 3-26.) On January 31, 2011, with the assistance of appointed counsel, petitioner filed an amended motion for post-conviction relief and request for an evidentiary hearing. (Id. at 34-60.) On March 11, 2011, the motion

court denied petitioner's request for an evidentiary hearing. (Id. at 62.) Three days later, on March 14, 2011, the motion court denied petitioner's request for post-conviction relief. (Id. at 63-66). On April 24, 2012, the Missouri Court of Appeals affirmed the denial of petitioner's post-conviction relief. (Id., Ex. 9); State v. Carmical, 365 S.W.3d 618 (Mo. Ct. App. 2012.)

On May 15, 2013, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254.

In denying petitioner's direct appeal, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> On February 19, 2007, Tim McDevitt (McDevitt), an evening maintenance worker and resident of the Economy Inn and Suites in Bridgeton, was walking to the motel's office to clock in for work when he noticed that the curtains to Rooms 330 and 340 were closed. The motel policy called for the housekeeping staff to open the curtains of unoccupied rooms. Room 330 was not rented out to a guest that evening. McDevitt reported the closed curtains to the motel manager, Abuhakim Subhanee (Manager), and then continued to do maintenance work in various rooms.
>
> About an hour and a half later, while McDevitt was outside changing light bulbs in front of the office, he saw [petitioner], who sometimes did odd jobs around the motel and was dating a housekeeper. [Petitioner] previously had lived at the Economy Inn, but was not living there on February 19, 2007. [Petitioner] did not have permission to occupy any of the rooms. [Petitioner] walked into the office to heat something in the microwave. McDevitt then went to work on a different corner of the building and did not see [petitioner] leave the office.
>
> Later in the evening, McDevitt was collecting trash when he encountered Marty Taveggia (Victim), the assistant manager and night desk clerk at the Economy Inn. Victim had replaced Manager behind the desk. Victim was going to check on the rooms that were listed as unoccupied but had closed curtains. McDevitt and Victim walked together for a short way before Victim went toward the rooms and McDevitt continued on to the dumpster.
>
> When McDevitt was almost finished taking out the trash, he realized that Victim had not returned. McDevitt looked down the sidewalk but did not see Victim. He went to the area where Victim had been headed and heard a loud banging noise coming from Room 330. McDevitt ran to the office and told Manager that Victim was on the grounds and there might be a problem. McDevitt returned to Room 330 and waited for Manager. Manager arrived at the room, but then returned to the office to get the key to Room 330. While waiting, McDevitt saw [petitioner] come out of Room 330. [Petitioner] was carrying a black trash bag. [Petitioner] was sweating even though it was cold outside. [Petitioner] told

-2-

McDevitt that Victim had found him in the room and told him to get out or the police would be called. [Petitioner] walked around the corner of the building and disappeared from view.

Thinking [petitioner's] story sounded logical at the time, McDevitt resumed collecting trash. As McDevitt was doing so, [petitioner] reappeared without the trash bag and asked whether McDevitt had seen Victim. McDevitt answered no, then [petitioner] left. Manager and his wife then drove up in Manager's car. Because no one had seen Victim, Manager and McDevitt decided to call the police.

The Bridgeton 911 operator received three calls concerning Victim on February 19, 2007. In addition to the call from Manager and McDevitt, the operator received two calls from [petitioner's] cell phone. [Petitioner] identified himself in the call as Dwayne Smith and said he was afraid because he had witnessed a fight between two white males. In a second call about seven minutes after the first, [petitioner] said that he had moved a man to Room 338 and that police should check that room.

When the Bridgeton police arrived at the motel, they found Manager, his wife, and McDevitt sitting in a car parked near Room 330. The officers took the key, entered Room 330, and saw what appeared to be blood on the carpet. The police saw a television on the bathroom counter, a blanket attached to and hung from the wall to shield the television's light, and a drawer missing from the dresser. The drawer was found behind the door and it had a red stain on it. A liquid red stain was found on the carpet next to the dresser drawer. Another television sat on the dresser. A pillowcase and sheet found in the room appeared to have bloodstains on them. A document from the Missouri Department of Social Services with [petitioner's] name on it was found on the floor. The bed appeared to have been slept in.

The officers found what appeared to be a trail of blood on the sidewalk outside of Room 330, leading to Room 338. The curtains to Room 338 were opened, and through the window, the officers saw Victim lying on the floor. The officers kicked open the door, checked Victim for a pulse and, not finding one, did a sweep of the room checking for possible suspects. Victim had been beaten in the face and had a broken nose, a split lip, and numerous bruises. The medical examiner testified that his injuries were consistent with Victim being struck with a stained dresser drawer that was found on the floor in Room 330. Victim also had injuries consistent with manual strangulation. The medical examiner testified that the cause of Victim's death was either blunt head trauma or manual strangulation, which appeared to happen concurrently.

Crime scene detectives found on the roof above Room 330 a coat and a white sheet, which appeared to have bloodstains on it. In a trash can outside of Room 332, officers found a tank top, boxer shorts, and a pair of socks with a

reddish-brown stain on them. In Room 338, a backpack and a black trash bag, both containing clothing and personal items, were found behind the bed. The room did not have a television. Red stains were found on the doorjamb and on the wall past the bed.

When [petitioner] was identified as the person who probably made the 911 calls, one of the officers at the scene, Officer Jim Livingston, who had a good relationship with [petitioner], called him and arranged to pick him up for questioning. [Petitioner] was taken to the police station where Officer Livingston and his partner questioned [petitioner]. During a videotaped interview, [petitioner] explained that after Victim told him the vacate Room 330, he moved his belongings to Room 338 with intention of collecting them later. [Petitioner] said he had seen Victim and McDevitt arguing, and he saw McDevitt push Victim into Room 330. [Petitioner] said he later went to retrieve his cell phone from Room 330 and found Victim's body bruised and battered, but still alive, he thought. [Petitioner] said he moved Victim's body to Room 338 to protect him from further harm, and then called the police.

[Petitioner] gave a similar statement to two other detectives, and then suffered a seizure during a break in the questioning. [Petitioner] was taken to a hospital where his fingernail scrapings, hair samples and clothing were collected. His Atlanta Braves jacket had numerous stains on the front and back. An adapter with a frayed cord was found in the coat pocket and had reddish stains on it. [Petitioner's] blue jeans had reddish stains on the front right leg and a few spots on the lower right cuff and left leg. [Petitioner] had been wearing a woven leather belt that was broken at the tip, similar to the partial belt found in Room 330. A piece of similar belt was found in [petitioner's] jacket pocket. [Petitioner's] shirt appeared to have bloodstains on it as well.

[Petitioner] was released from the hospital about three hours after suffering the seizure. When he was being returned to the police station, [petitioner] said he wanted to speak with Detective Lance Harris, who had been conducting the interview just before the seizure. [Petitioner], crying, told Detective Harris that he was sorry and wanted to tell him what happened. [Petitioner] stated that he had been staying at the motel because he had no place to live. He said that Victim walked into Room 330 and told him that he would call the police if [Petitioner] did not leave. [Petitioner] said that he got mad and started punching Victim. After Victim fell backward, the next thing [petitioner] remembered was sitting on top of Victim, whose face was unrecognizable and he was gurgling blood. [Petitioner] said he knew he hurt Victim and was afraid of going to jail, so he dragged Victim's body to Room 338. He said he threw some socks in the trash can outside the room. While moving his things out of Room 330, [petitioner] encountered McDevitt. [Petitioner] wrote out a short statement admitting to punching Victim, but said that he did not intend to hurt him. He also agreed to return to the motel to participate in a video reenactment of the murder.

> When Officer Livingston drove [petitioner] from the Bridgeton jail to the St. Louis County jail, [petitioner] apologized to him for lying and asked him to tell Detective Harris that he was sorry for lying to him, too.

(Doc. 15, Ex. 5 at 2-6.)

## II. PETITIONER'S GROUNDS FOR FEDERAL HABEAS RELIEF

Petitioner alleges four grounds for relief in this habeas action:

(1) Petitioner's conviction was obtained through the use of an involuntary and coerced confession.

(2) Petitioner's Fifth Amendment right against self-incrimination was violated when the police officers did not electronically record his interview that resulted in his confession.

(3) Petitioner received ineffective assistance of trial counsel because counsel:

    (a) advised petitioner not to testify,

    (b) failed to have hair fiber tested, and

    (c) failed to endorse a neurologist to testify.

(4) Petitioner received ineffective assistance of appellate counsel due to failure to appeal the trial court's ruling on petitioner's motion to suppress oral, written and recorded statements to the police as the result of coercion.

(Doc. 1.)

Respondent contends that the statute of limitations bars habeas relief. Respondent also contends that petitioner procedurally defaulted on Grounds 1 and 2 by failing to raise and properly preserve the claims in his direct appeal. Respondent further contends petitioner's grounds lack merit. (Doc. 13.)

## III. STATUTE OF LIMITATIONS

To obtain federal habeas relief, state prisoners must file their habeas petitions within one year of the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

On April 13, 2010, the Missouri Court of Appeals affirmed the judgment on direct appeal. (Doc. 15, Ex. 4.) On June 1, 2010, the appellate court denied petitioner's motion for rehearing or transfer. State v. Carmical, Case No. ED 92894.[1] On September 20, 2010, petitioner filed a motion for post-conviction relief (Doc. 15, Ex. 6 at 3-26), which on March 14, 2011, the state circuit court denied. (Id. at 63-66.) On April 24, 2012, the Missouri Court of Appeals affirmed the denial of post-conviction relief. (Id., Ex. 9.) On May 17, 2012, the appellate court issued its mandate. (Id. Ex. 11.) Three hundred sixty-three days later, on May 15, 2013, petitioner filed the instant petition for federal habeas corpus relief. (Doc. 1.)

More than 400 days, not tolled by § 2242(d)(2), passed between the denial of petitioner's motion for rehearing or transfer of his direct appeal to the Missouri Supreme Court and the filing of his federal habeas petition. Accordingly, the applicable federal statute of limitations bars petitioner's grounds for habeas relief. Nevertheless, this court has considered the habeas petition as though it had been filed within the limitations period.

## IV. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions under 28 U.S.C. § 2254. See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by

---

[1] This court takes judicial notice of the state court proceedings as they are reported on Case.net, http://www.courts.mo.gov/casenet/ (last visited August 15, 2014). See Fed. R. Evid. 201.

any available procedure, the question presented." 28 U.S.C. § 2254(c).  As discussed above, petitioner directly appealed his conviction and sentence, moved for post-conviction relief, and appealed the denial of his motion for post-conviction relief.

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement.  Rather, a petitioner must have fairly presented the substance of each federal ground to both the trial and appellate courts.  Anderson v. Harless, 459 U.S. 4, 6 (1982).  If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate time requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts.  Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997).  The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack.  See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner raised Grounds 1 and 2 in the state circuit court when he filed original and then supplemental motions to suppress his confessions; the trial court denied both motions.  (Doc. 15, Ex. 1 at 26-39, 106-09, 118.)  Petitioner raised the statement suppression issue a second time in his motion for a new trial.  (Id. at 150-65.)  However, petitioner did not raise Grounds 1 and 2 in his direct appeal.  (Id., Ex. 2.)  He did allege these grounds in his motion for post-conviction relief.  (Id., Ex. 6 at 3-40.)   But he did not raise them on appeal from the denial of post-conviction relief.  (Id., Ex. 7.)

Petitioner raised Grounds 3 and 4 in his amended post-conviction relief motion, and the circuit court ruled that the claims were without merit.  (Id., Ex. 6 at 34-66.)  Petitioner presented Ground 3 and 4 to the Missouri Court of Appeals in his post-conviction relief appeal.  (Id., Ex. 7.)  Grounds 3 and 4 are not procedurally barred.

Petitioner may avoid the procedural bar of Grounds 1 and 2 by demonstrating either that there is a legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claims would result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to his case impeded his efforts to comply with the state procedural requirements.  Id. at 750-52.  To establish actual prejudice, petitioner

must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (internal citations omitted); see also Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995) (stating that the standard of prejudice to overcome procedural default "is higher than that required to establish ineffective assistance of counsel under Strickland").

Here, in Grounds 3 and 4, petitioner claims that ineffective assistance of appellate counsel caused his failure to raise Grounds 1 and 2 on direct appeal. However, a petitioner must first have presented the argument as an independent Sixth Amendment claim to the state courts before he is allowed to argue ineffective assistance of appellate counsel for procedural default. McKinnon v. Lockhart, 921 F.2d 830, 832 (8th Cir. 1990). Petitioner raised his claim for ineffective assistance of appellate counsel independently in his motion for post-conviction relief. (Doc. 15, Ex. 6, 38-39.) However, petitioner has failed to demonstrate legally sufficient cause and prejudice resulting from his appellate counsel's failure to raise Grounds 1 and 2 on appeal. Thus, Grounds 1 and 2 are procedurally barred.

Nevertheless, Congress has authorized federal district courts to consider and to dismiss procedurally barred grounds if a court concludes that the grounds are without merit. 28 U.S.C. § 2254(b)(2). The undersigned has considered all of petitioner's federal grounds on their merits and concludes they are without merit.

## V. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

In this case, petitioner's Grounds 1 and 2 were denied by the state circuit court, but were not presented to the appellate court. Grounds 3 and 4 were ruled against petitioner by both the state trial and appellate courts.

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Thaler v. Haynes, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted). This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Thaler, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 130 S. Ct. at 845.

## VI. MERITS DISCUSSION

**Grounds 1 and 2**

Petitioner claims he was deprived of rights guaranteed by the Fifth and Fourteenth Amendments because his conviction was obtained through the use of involuntary and coerced statements. Petitioner alleges that Det. Harris told him what to write in his written confession, and he alleges that the failure of the police to make a video recording of an interview violated his rights.

The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. AMEND XIV. By virtue of the Due Process Clause, there are certain interrogation techniques that are "so offensive to a civilized justice system that they must be condemned." Colorado v. Connelly, 479 U.S. 157, 163 (1986). It is well established that, absent coercive police conduct, there is no basis for concluding that a

state has deprived a criminal defendant of due process of law. Id. at 164. Coercive police misconduct, therefore, is a necessary predicate to a finding that a confession was not voluntarily made within the meaning of the Due Process Clause. Id. at 167.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . ." U.S. CONST. AMEND. V. To protect an individual's right against self-incrimination, an individual must be warned prior to custodial interrogation that he has the right to remain silent and that any statement may be used against him in court. Miranda v. Arizona, 384 U.S. 436, 444 (1966). This protection arises only when a defendant is both in custody and under interrogation. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

At trial, petitioner moved to suppress his statements, including his written confession, arguing that the police officers obtained the confession immediately after his medical seizure and that he was on medication. (Doc. 15, Ex. 1 at 26-29; 70-71.) The trial court found petitioner knowingly and freely made the statements. (Id. at 118.) Petitioner has not provided the court with clear and convincing evidence necessary to show that the trial court's finding lacks evidentiary support. Therefore, this court concludes that the state trial court reasonably applied federal law to petitioner's claim. See 28 U.S.C. § 2254(e)(1).

Moreover, the right against self-incrimination does not require police officers to record confessions electronically. See Reinert v. Larkins, 379 F.3d 76, 94 n.4 (3d Cir. 2004) ("Insofar as Reinert invokes the Fifth and Sixth Amendments of the Federal Constitution, he invokes a purported federal right to have a custodial interrogation recorded. He does not, however, cite any authority for this proposition; again there is none."); United States v. Dobbins, 165 F.3d 29 (6th Cir. 1998) ("federal law does not require that a state electronically record custodial interrogations and confessions"); United States v. Owlboy, 370 F.Supp.2d 946, 948-49 (D. N.D. 2005).

The state circuit court rulings denying his motions to suppress his statements were reasonable applications of federal law. Accordingly, Grounds 1 and 2 are without merit.

**Ground 3**

Petitioner argues that his trial counsel violated his constitutional right to effective assistance of counsel for advising him not to testify, failing to test hair fiber samples, and not seeking testimony from a neurologist.

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments. Under <u>Strickland</u>, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. at 686. If there is any reasonable argument that the state court decision is consistent with <u>Strickland</u>, then the state court decision must be left undisturbed. <u>Williams v. Roper</u>, 695 F.3d 825, 831 (8th Cir. 2012).

Petitioner must prove two elements to prevail on a claim of ineffective assistance of counsel. First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. <u>Strickland.</u> at 466 U.S. at 687–88. There is a strong presumption that counsel has rendered constitutionally effective assistance. <u>Id.</u> at 690; <u>Blackmon v. White</u>, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable. <u>Strickland</u>, 466 U.S. at 690–91. Additionally, decisions following reasonable, but less thorough, investigation are to be upheld to the extent that they are supported by reasonable judgment. <u>Id.</u>

Second, under <u>Strickland</u> petitioner must demonstrate actual prejudice by counsel's deficient performance. <u>Id.</u> at 687. To show prejudice, "the likelihood of a different result must be substantial, not just conceivable." <u>Williams v. Roper</u>, 695 F.3d at 831. The prejudice, therefore, must be an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).

First, petitioner claims ineffective assistance of counsel because his trial attorney advised him not to testify due to a prior conviction and he alleges that he did not understand that the decision to testify was his decision. The appellate court found that prior to the petitioner's trial counsel presenting the defense case, the trial court inquired about whether petitioner and his attorney had discussed if petitioner would testify in his defense. (Doc. 15, Ex. 10 at 4.) The appellate court noted that, in response to this inquiry, petitioner's trial counsel "informed the [trial] court that he had talked with [petitioner] and would talk with him again, regarding [petitioner's] decision whether or not to testify." The Court of Appeals then stated, "We find the motion court's conclusion [petitioner] was aware of his right to testify was not clearly erroneous. As a result, [petitioner's] claim he did not voluntarily and knowingly waive this right fails.

Accordingly, we find the motion court did not clearly err in denying [petitioner's] claim without an evidentiary hearing." (Id.) Moreover, the court of appeals recounted petitioner's own allegation that his trial counsel advised him to not testify due to his prior conviction for attempted battery with a deadly weapon in Nevada. (Id. at 3.) Thus, petitioner's trial counsel's advice, based upon this prior conviction, was a strategic choice which is "virtually unchallengeable."

Second, petitioner claims ineffective assistance of trial counsel for failing to test hair fiber samples from a hat seized at the crime scene for DNA. Petitioner alleges that the hair was a different color than his own and that a hair fiber test would have proven the presence of another person at the crime scene. The state appellate court discussed this matter:

> In his third point, [petitioner] contends the motion court erred in denying without an evidentiary hearing his claim trial counsel was ineffective for failing to have a fiber found in a hat seized from the crime scene tested for DNA. [Petitioner] contends had the fiber been tested it would have refuted evidence [petitioner] and the victim were the only individuals present in the motel room on the night of the murder. We disagree.
>
> At trial, a crime scene technician testified regarding a hat found at the crime scene. She stated the hat contained a fiber that could have been a hair and the fiber appeared to blonde or red, not black. She further noted no black hairs were seen in the hat. The hat and fiber were admitted into evidence, and the jury was allowed to view and touch them.
>
> Again, [petitioner] fails to allege sufficient facts to establish his trial counsel's performance was deficient. It is pure speculation to contend a DNA test would show the fiber was indeed hair and that it belonged to someone other than [petitioner] or the victim. Conclusionary speculations in a motion for post-conviction relief are not substantive evidence that trial counsel was ineffective.
>
> Additionally, [petitioner] fails to allege facts establishing prejudice. Here, the jury was able to see the fiber and see that it was not a black hair from either [petitioner] or the victim. Thus, we find the motion court did not clearly err in denying [petitioner's] claim without an evidentiary hearing.

(Id. at 6-7) (internal citations omitted).

Even if a DNA test had shown that the hair fiber belonged to another, it is unlikely that the presence of a single hair would have overcome the substantial evidence suggesting petitioner's guilt, e.g. his confession, petitioner's bloodstained clothing, bloodstained adaptor that matched a cord found at the crime scene, and a broken belt piece that matched a belt piece

found at the scene. (Id., Ex. 5 at 5-6.) Additionally, the record indicates petitioner's trial counsel pointed out to the jury the differences between the hair sample found at the crime scene and the hair of the victim through cross-examination of the crime scene technician, further mitigating any potentially prejudicial effect. (Id., Ex. 6 at 16; Ex. 8 at 24-25.)

Third, petitioner claims his trial counsel was ineffective for failing to call a neurologist with expertise in seizures to testify about the physical and mental effects of petitioner's seizure condition and medication, Cerebyx, and their effect on his ability to provide a constitutionally admissible written statement to the police. Trial counsel does not have to hire or retain an expert witness in every case for his assistance to be considered effective, provided he prepares an adequate defense for a client through careful investigation of facts surrounding the case. Battle v. Delo, 19 F.3d 1547, 1557 (8th Cir. 1994); Knott v. Mabry, 671 F.2d 1208, 1212-13 (8th Cir. 1982).

The state appellate court found that petitioner failed to show deficient performance due to the speculative nature of any neurologist's testimony. (Doc. 10, Ex. 10 at 5.) Further, the court found that petitioner failed to show prejudice, because his trial counsel introduced evidence that petitioner took Cerebyx shortly before his confession and evidence regarding the effects of Cerebyx. The appellate court ruled as follows:

> After three and one-half hours of interrogation, [petitioner] experienced a seizure and was taken to the hospital where he remained for several hours. While at the hospital, [petitioner] was given 15 mg of Cerebyx. When [petitioner] returned to the station, [petitioner] asked to speak to a detective. [Petitioner] confessed to beating the victim, agreed to write a statement and do a video re-enactment.
>
> To prevail on a claim of ineffective assistance of counsel for failure to call an expert witness, a movant must allege and prove the expert would have provided a viable defense. To support a charge of ineffective assistance of counsel based on failure to secure the testimony on an expert witness, at a minimum, a movant is required to show what the evidence would have been.
>
> [Petitioner] fails to allege sufficient facts to establish his trial counsel's performance was deficient. [Petitioner] does not specify what an expert's testimony would have been regarding his physical and mental state after having a seizure and taking Cerebyx or specifically how this affected his ability to give a knowing, voluntary and intelligent interview, written statement or videotaped re-enactment. [Petitioner] merely speculates this presumed testimony would establish his statements were unknowingly, involuntarily and unintelligently made, thus [petitioner] does not carry his burden.

> Furthermore, [petitioner] fails to allege facts establishing prejudice. [Petitioner's] trial counsel presented evidence of the potential side effects of the Cerebyx, which included nervousness, frequent reflexes, increased speech disorder, dysarthria, intracranial hypertension, thinking abnormality, and hypoesthesia. Thus the jury was made aware of the possible effect this drug could have on [petitioner]. Therefore, we find the motion court did not clearly err in denying [petitioner's] claim without an evidentiary hearing.

(Id. at 5-6)(internal citations omitted).

This court concludes that the Missouri trial and appellate courts reasonably applied federal law. Accordingly, Ground 3 is without merit.

**Ground 4**

Petitioner further claims he received ineffective assistance of appellate counsel for failing to raise a preserved claim that petitioner's oral, written and recorded statements were coerced and should have been suppressed. In Smith v. Robbins, 528 U.S. 259, 285 (2000), the Supreme Court determined that in order to prove ineffective assistance of appellate counsel a petitioner must fulfill the Strickland requirements by showing that his counsel was unreasonably deficient and that his defense was prejudiced by his counsel's deficiency. On this issue of prejudice, this means that petitioner must establish that, if his ground had been asserted on appeal, "he would have prevailed on his appeal." Smith v. Robbins, 528 U.S. at 285.

The Missouri Court of Appeals ruled as follows:

> In a pre-trial motion, [petitioner's] trial attorney challenged the admission of [petitioner's] oral, written, and videotaped statements, including a videotaped re-enactment, in the grounds the statements were involuntary and obtained in violation of [petitioner's] rights against self-incrimination, right to counsel, and due process of law. A hearing was held on the matter at which time the State presented testimony from police detectives and a police officer regarding [petitioner's] behavior and his Miranda warning and waiver. [Petitioner's] motion was denied. The trial court found [petitioner] was given his Miranda warnings and he knowingly and voluntarily waived them. The trial court also found his statements after Miranda were freely and voluntarily made. The trial court concluded [petitioner] was coherent and cooperative and was not acting in any way that would show his statements were not made voluntarily.
>
> [Petitioner's] attorney included the allegation of error in the motion for new trial to preserve the issue for appellate review. Appellate counsel did not, however, raise the issue in [petitioner's] direct appeal. The motion court found

the trial court's ruling on the motion to suppress was correct and concluded appellate counsel was not ineffective for not pursuing a point that would fail.

[Petitioner] does not assert any facts nor do we find any in the record that demonstrate the trial court's ruling was erroneous. Thus we conclude there is not a reasonable probability had appellate counsel raised this issue on direct appeal, [petitioner]s appellate counsel did not fail to assert a claim that would have required a reversal and cannot, therefore, be consider ineffective.

(Doc. 10, Ex. 10, at 7-8) (internal footnotes omitted). Considering the lack of merit in Grounds 1 and 2, appellate counsel did not act deficiently by failing to raise them on appeal, and petitioner failed to demonstrate that such failure caused him legally sufficient prejudice. The Missouri courts reasonably applied federal law to petitioner's claim. Accordingly, Ground 4 is without merit.

## VI. CONCLUSION

For the reasons stated above, the petition of Henry Carmical for a writ of habeas corpus is denied. Because petitioner has made no substantial showing of the denial of a constitutional right, the court does not issue a certificate of appealability. 28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 15, 2014.